UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:03CV1031 (SRU) |
| | : | |
| ONE PARCEL OF PROPERTY | : | |
| LOCATED AT 38 JEFFERSON AVENUE, | : | |
| NEW LONDON, CONNECTICUT, | : | |
| WITH ALL APPURTENANCES AND | : | |
| IMPROVEMENTS THEREON, AND | : | |
| | : | |
| Defendant. | : | June 21, 2005 |
| | : | |
| [CLAIMANTS: MARIA M. FERNANDES, | : | |
| PEOPLE'S BANK, AND ROBERT A. | : | |
| VENTURINI] | : | |

AMENDED VERIFIED COMPLAINT OF FORFEITURE

Now comes plaintiff, United States of America, by and through its attorneys, Kevin J.

O'Connor, United States Attorney for the District of Connecticut, and Julie G. Turbert, Assistant

United States Attorney, and respectfully states as follows:

1.      This is a civil action in rem brought to enforce the provision of 21 U.S.C. §

881(a)(7) for the forfeiture of real property which was used or intended to be used in any manner

or part to commit or to facilitate the commission of a violation of the Controlled Substances Act,

21 U.S.C. §§ 801 et seq., or to enforce the provision of 21 U.S.C. § 881(a)(6) for the forfeiture of

real property which was purchased with proceeds traceable to the exchange of controlled

substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq.

2.     This Court has jurisdiction over this matter by virtue of 28 U.S.C. § 1345 and § 1355.

3.     Venue in the District of Connecticut is appropriate pursuant to 28 U.S.C. § 1355 and § 1395.

4.     The Defendant is one parcel of property located at 38 Jefferson Avenue, New London, Connecticut, with all appurtenances and improvements thereon ("Defendant Property"), more particularly described in Exhibit A, which is attached hereto and fully incorporated herein by reference.

5.     The United States does not request authority from the Court to seize the Defendant Property at this time.  The United States will, as provided by 18 U.S.C. §§ 985(b)(1) and (c)(1):

(a)     post notice of this action and a copy of the Complaint on the Defendant Property, and

(b)     serve notice of this action on the record owner of the Defendant Property, and any other person or entity who may claim an interest in the Defendant Property, along with a copy of this Verified Complaint of Forfeiture,

(c)     execute a writ of entry for the purposes of conducting an inspection and inventory of the property, and

(d)     record a lis pendens on the New London Land Records of the Defendant Property's status as a defendant in this in rem action.

6.     The United States will also, as provided by 19 U.S.C. § 1606, appraise the Defendant Property when it executes the Writ of Entry.

7.    The Defendant Property located at 38 Jefferson Avenue, New London, Connecticut was acquired by Maria M. Fernandes, from IMC Mortgage Company, as successor by merger to Industry Mortgage Company, L.P., for $24,500.00, by Special Warranty Deed, dated March 23, 2000, recorded on April 3, 2000, at Volume 1149, Page 169 of the New London Land Records.

8.    People's Bank may have an interest in the Defendant Property by virtue of a mortgage in the original principal amount of $75,000.00, which mortgage is dated April 28, 2003, and recorded on May 28, 2003,  at Volume 1351, Page 86 of the New London Land Records.

9.    The New London Tax Assessor has appraised the Defendant Property at approximately $122,300.00.

BACKGROUND OF INVESTIGATION<br>OF ROBERT VENTURINI, JR.'S ILLEGAL NARCOTIC ORGANIZATION

10.    Since June of 1996, the New London Police Department, Connecticut State Police Statewide Narcotics Task Force-Eastern Division, and the Stonington Police Department have conducted numerous narcotics-related investigations involving Robert Venturini, Jr. ("Venturini") and his illegal narcotic organization.  During the course of the investigation, numerous search and seizure warrants were executed resulting in the seizure of large amounts of cocaine, marijuana, ecstasy, methylenedioxymethamphetamine (MDMA), ketamine, cash, and firearms.  During the course of the investigations, law enforcement officers conducted numerous interviews of arrested individuals, concerned citizens, self-proclaimed associates of Robert Venturini, Jr. and confidential and reliable informants.  The investigation and interviews revealed

that Robert Venturini was involved in the trafficking and sale of illegal narcotics in Arkansas, Texas, Rhode Island, Arizona, and Connecticut.

11.     In May and June of 2002, law enforcement officers of the New London and Stonington Police Departments, and Statewide Narcotics Task Force-Eastern Division continued to investigate Robert Venturini and learned that he and his associates transported large amounts of narcotics to Connecticut from Arizona, which were subsequently divided into street level quantities for distribution. Law enforcement officers learned that Robert Venturini, Jr. used the property located at 62 Cutler Street in New London, as well as 143 Simpson Lane in Montville, as "safe houses" to store narcotics, weapons, and monies derived from the sale of illegal drugs.

12.     The investigation revealed that Robert Venturini, Jr. was the leader of an illegal drug organization involving at least six other individuals. Law enforcement officers identified the following organizational structure:

(a)     Robert Venturini Jr.: Responsible for all of decision-making and determination of when and where to purchase and transport drugs, the price to charge, where to store, or "safe house" drugs, and how to launder the illicit drug proceeds.

(b)     Dwayne Venturini, Robert Venturini, Jr.'s brother: Responsible for the transportation of illegal drugs from Arizona to Connecticut and "safe housing" the illegal drugs.

(c)     Lisa Tricou, girlfriend of Dwayne Venturini: Responsible for the transportation of illegal drugs from Arizona to Connecticut.

4

(d)    <u>Patrick Palmorone</u>, an associate of Robert Venturini, Jr.: Responsible for the transportation of illegal drugs from Arizona to Connecticut, and laundering of illicit drug proceeds.

(e)    <u>Tessie Herbert</u>, girlfriend of Robert Venturini, Jr.: Responsible for the transportation of illegal drugs from Arizona to Connecticut, the "safe housing" of illegal drugs, and the laundering of illicit drug proceeds.

(f)    <u>Daniel Douton</u>, an associate of Robert Venturini, Jr.: Responsible for the laundering of illicit drug proceeds.

(g)    <u>Maria Fernandes</u>, aunt of Robert Venturini, Jr. and Dwayne Venturini: Responsible for laundering illicit drug proceeds.

(h)    <u>Daniel Eldridge</u>, an associate of Robert Venturini, Jr. and Dwayne Venturini: Responsible for possession and "safe housing" illegal drugs.

13.    On March 28, 2002, law enforcement officers in the Amarillo Texas Police Department conducted a motor vehicle stop of a vehicle driven by Dwayne Venturini and also occupied by Lisa Tricou. The law enforcement officers were suspicious and summoned a narcotic K-9 dog to the scene. The K-9 alerted to the trunk area of the vehicle. Pursuant to the alert, the officers searched the vehicle and found approximately 106 pounds of marijuana and 5.62 pounds of cocaine, which field tested positive. Dwayne Venturini and Lisa Tricou were subsequently placed under arrest.

14.    In July of 2002, law enforcement officers of the New London Police Department sent a set of Robert Venturini, Jr.'s fingerprints to the officers in Texas to compare with any prints recovered from the narcotics or packaging materials seized from Dwayne Venturini and

Lisa Tricou's vehicle on March 28, 2002.  In April of 2002, law enforcement officers assigned to the Identification Division of the Amarillo Police Department had recovered three latent fingerprints from a white plastic trash bag which had wrapped a portion of the 106 pounds of marijuana.  In July 2002, in response to the request from the New London Police Department, the Amarillo Police Department, compared the known ink fingerprints of Robert Venturini, Jr. with the three latent prints recovered from the white trash bag.  The three latent fingerprints were positively identified as the fingerprints of Robert Venturini, Jr.

15.     On June 18, 2002, law enforcement officers in Arkansas conducted a motor vehicle stop of a vehicle driven by Patrick Palmorone and also occupied by Tessie Herbert.  According to the Arkansas State Trooper, Patrick Palmorone appeared nervous and the trooper smelled a strong odor of marijuana emanating from the vehicle.  Palmorone told the trooper that they were coming from Phoenix, Arizona, and that neither of them knew who owned the vehicle they were driving.  Palmorone refused to give consent to search the vehicle.  Back up officers arrived who also smelled the strong odor of marijuana.  In response to the strong marijuana odor emanating from the vehicle, the troopers searched the vehicle and found 140 pounds of marijuana, which field tested positive.  Patrick Palmorone and Tessie Herbert were subsequently placed under arrest and charged with possession of marijuana with intent to deliver.  The vehicle is registered to Florence Venturini, Robert Venturini, Jr. and Dwayne Venturini's grandmother.

16.     On July 14, 2002, Patrick Palmorone was selected for a "pat down" as he entered a check-point of the Phoenix Arizona airport.  Patrick Palmorone struggled with airport security, Sky Harbour Police, and fled after struggling out of his two shirts.  Palmorone was observed pulling an item from his midsection.  Palmorone was apprehended a short time later and the item was recovered.  Duct tape was found on the item and on Palmorone's body.  The item was held

together with brown packing tape and contained approximately one (1) kilogram of cocaine, which field tested positive.

17.     After being advised of his constitutional rights, Palmorone told the Sky Harbour Police Officer that he was involved with a major drug dealer named Robert Venturini, Jr., and that in the past he had done several drug courier trips for him.  Palmorone told the officer that cocaine is generally transported by commercial airplanes from Phoenix, Arizona to Connecticut, and that large quantities of marijuana are driven back to Connecticut by couriers.  Palmorone said that he made two successful trips driving marijuana back to Connecticut, but that on his third trip, he was caught in Arkansas on June 18, 2002.  Palmorone said that he was released from Arkansas on $15,000 bond which Robert Venturini, Jr. provided to Daniel Douton to tender for his release.  Palmorone said that he was traveling with Robert Venturini, Jr.'s girlfriend, Tessie Herbert, and that Robert had bonded her out as well.

18.     Palmorone also told law enforcement officers that Robert Venturini, Jr. contacted him on July 12, 2002 and told him that they needed to raise money to pay for lawyers and were going to go Phoenix to pick up a kilo of cocaine.  Palmorone stated that he had a standing agreement with Robert Venturini, Jr. that he would be paid $1,000 each time he transported cocaine to Connecticut for Venturini.  Palmorone said that on July 13, 2002, he flew to Phoenix from Providence, Rhode Island with two other individuals, Allen Smith and Kristen Startz, and that he met Robert Venturini, Jr. in the baggage claim area at the airport in Phoenix.  Palmorone said that he and Robert Venturini, Jr. took a taxi to a hotel room where Venturini called a Mexican male to deliver cocaine to their hotel room.  Palmorone said that he observed Venturini pay a Mexican male named Martin a large sum of money in exchange for a quantity of cocaine.

Palmorone told the officers that the next day he and Kristen and Allen took a taxi to the airport at which time he was stopped as he attempted to board a flight home.

19.     Law enforcement officers in Phoenix confirmed with the airline that Kristen Startz had boarded the flight to Providence, but that Allen Smith had not.  Officers contacted Rhode Island law enforcement authorities to alert them to Kristen Startz's arrival at the Providence airport.  The officers approached Kristen Startz after she exited the plane at the Providence airport.  Kristen Startz agreed to speak to the officers and told them that she had flown to Phoenix on July 13, 2002 with Patrick Palmorone and that he had paid for the trip.  Startz allowed the officers to search her bag which revealed approximately one (1) kilo of cocaine.  Startz was placed under arrest, at which time she told the officers that her real name was Lisa Tricou.  Tricou told the officers that she had flown to Phoenix with Patrick Palmorone the day before and that he had given her a kilo of cocaine to bring back with her on a flight back to Providence.  She stated that she did not know how Patrick Palmorone came into possession of the cocaine.

## FIRST SEARCH AND SEIZURE WARRANT EXECUTED AT 171 LINCOLN AVENUE, NEW LONDON, CONNECTICUT

20.     On July 7, 2001, the New London Police Department received information from an anonymous caller that Robert Venturini, Jr. was involved in the distribution of cocaine, marijuana, and ecstasy in the New London area.  The anonymous caller gave a physical description of Venturini and went on to state that Venturini stored his drugs in the basement of 62 Cutler Street, New London.  The anonymous caller also stated that one of Venturini's criminal

associates, Christopher Jenkins, lived at 173 Lincoln Avenue, but that Jenkins also kept a

bedroom on the second floor of 171 Lincoln Avenue.

21.     On August 24, 2001, the Waterford Police Department received information from

an anonymous caller who had contacted the Detective Bureau in the past about Robert Venturini,

Jr.  The anonymous caller said that Venturini had recently bought property at 62 Cutler Street in

New London.  The caller said that Venturini lived at 171 Lincoln Avenue, but used the first floor

of 62 Cutler Street to "stash his stuff."  The caller also indicated that there was a tenant on the

second floor of 62 Cutler Street.  The caller said that Venturini had a group of individuals

working for him one of who was named Chris.

22.     On August 30, 2001, members of the New London Police Department executed a

state search and seizure warrant at the residence of Robert Venturini, Jr. located at 171 Lincoln

Avenue, New London.  Seized pursuant to the warrant were two electronic scales, drug notes,

plastic baggies, marijuana residue, and a stun gun.  The officers found $15,817.00 in cash in

Robert Venturini, Jr.'s bedroom, and $29,492.00 in Christopher Jenkins' bedroom.  Robert

Venturini was arrested and charged with conspiracy to commit sale of a narcotic substance,

criminal possession of a firearm, and possession of drug paraphernalia.  During the execution of

the warrant, the officers answered Robert Venturini's cell phone which received numerous calls

from individuals asking for Bob and interested in purchasing narcotics.  One of the callers

wanted to trade a large amount of ketamine for Ecstasy tablets worth $4,800.00.  Later that

evening, a undercover officers posing as runners for Robert Venturini, Jr., met with the caller

who was found to be in possession of a large amount of ketamine, at which time he was arrested.

INFORMATION PROVIDED TO LAW ENFORCEMENT
CONCERNING ROBERT VENTURINI, JR.'S ILLEGAL DRUG OPERATION
AND EXECUTION OF WARRANTS AT
171 LINCOLN AVENUE AND 38 JEFFERSON AVENUE

23.     On August 30, 2001, law enforcement officers interviewed an arrestee who made statements about Robert Venturini, Jr.  The arrestee told the officers that he/she had purchased marijuana from Venturini in the past within 171 Lincoln Avenue.  The arrestee also said that Venturini also sells ecstacy and that he/she had discussed the purchase of ecstasy the week of August 30, 2001.

24.     On October 27, 2001, an anonymous caller to the New London Police Department's narcotics hotline state that he/she had observed Bob Venturini bring a large amount of narcotics into 62 Cutler Street in New London.

25.     On October 29, 2001, law enforcement officers interviewed an arrested person who admitted to being a co-conspirator in Robert Venturini's drug enterprise and stated that he/she had first hand knowledge of Robert Venturini's involvement in the sale of cocaine, marijuana, and ecstasy in the City of New London.  This person indicated that he/she had known Venturini for approximately two years and had observed him sell cocaine, marijuana, and ecstasy on numerous occasions.  In addition, this arrestee stated that he/she had personal knowledge of the various residences Venturini used to facilitate his drug sales.  Based upon his/her personal knowledge, Venturini used 171 and 173 Lincoln Avenue, 62 Cutler Street, and 38 Jefferson Avenue in New London to facilitate the sale and storage of drugs.  The arrestee stated that Venturini moved drugs, monies and firearms among the residences to conceal them from law

enforcement, or others who might attempt to steal them. The arrestee also stated that he/she had been in 171 and 173 Lincoln Avenue between October 22 and 27, 2001, and had personally observed drug paraphernalia, including packaging materials, electronic scales associated with the distribution of drugs, quantities of cocaine, and large sums on money he/she knew to be the proceeds of illegal drug sales.

26.    The arrestee also stated that Robert Venturini used 38 Jefferson Avenue in New London and that on numerous occasions in October, 2001 he/she had been in the first floor apartment which is occupied by Tessie Herbert, and the second floor apartment which is occupied by Coral Watson, both of whom are associates of Venturini. The arrestee stated that he/she observed cocaine and marijuana in the first and second floor apartments of 38 Jefferson Avenue. The arrestee also observed narcotics stored in a hall closet on the second floor during the month of October, 2001. The arrestee further stated that he/she had personally observed individuals who traveled from New York almost on a weekly basis and meet with Venturini and exchange large amounts of drugs for large sums of monies exceeding $30,000.00 in cash. The arrestee stated that Venturini occasionally took these individuals to 38 Jefferson Avenue.

27.    On October 31, 2001, law enforcement officers executed state search and seizure warrants at 171 Lincoln Avenue, and 38 Jefferson Avenue, New London. Pursuant to the warrants, the officers seized $15,087.00 in cash, and other financial documents from 171 Lincoln Avenue, and a letter addressed to Robert Venturini, 171 Lincoln Avenue, New London, a plastic bag containing green plant material, which later tested positive for marijuana, packaging materials, small brown colored bottles, and drug records from 38 Jefferson Avenue.

11

## FIRST SEARCH AND SEIZURE WARRANT EXECUTED
## AT 62 CUTLER STREET, NEW LONDON, CONNECTICUT

28.     On October 29, 2001, the arrestee described in Paragraph 28 above, also provided information that he/she has observed cocaine and marijuana within the second floor of 62 Cutler Street, which is occupied by Amy Wiese, who is one of Venturini's associates.  The arrestee also indicated that he/she had observed drugs stored within a gas grill located inside the garage.

29.     On October 31, 2001, members of the New London Police Department and Connecticut State Police Statewide Narcotics Task Force-Eastern Division executed a state search and seizure warrant at property owned by Robert Venturini, Jr. located at 62 Cutler Street, New London.  Robert Venturini, Jr. was found in the first floor apartment when the officers arrived to execute the warrant.  Pursuant to the warrant, the officers seized the following items from the second floor apartment: two handguns, ammunition, drug records, two vials of ketamine, approximately one-half pound of marijuana, a triple beam scale, packaging materials, and approximately 1,000 pills of ecstacy (MDMA) methylenedioxymethamphetamine.  Robert Venturini, Jr. was placed under arrest and charged with possession of marijuana, possession of sale of a controlled substance, criminal possession of a firearm and possession of hallucinogens.

## CONTINUED INVESTIGATION OF
## ROBERT VENTURINI, JR.'S ORGANIZATION

30.     In May of 2002, members of the New London Police Department and Connecticut State Police Statewide Narcotics Task Force-Eastern Division received information from a reliable and confidential informant (hereinafter "CI #1") that Robert Venturini, Jr. was selling large quantities of marijuana and cocaine.  CI #1 also stated that Venturini had several associates

who sold narcotics for him, including Norman Percy and Dwayne Venturini, Robert's brother. The CI agreed to make a controlled purchase of cocaine from Robert Venturini.

31.     During the week ending May 11, 2002, law enforcement officers met with CI #1 and found him/her to be free of any contraband or monies.  The officers gave CI #1 recorded police funds for the controlled purchase from Venturini.  While under law enforcement surveillance, CI #1 contacted Venturini and they agreed to meet in Montville.  Venturini would only meet with CI #1 if he/she was with Norman Percy.  CI #1 arranged for Norman Percy, who was unaware of CI #1's cooperation with law enforcement, to accompany him/her to the meeting with Venturini.  Law enforcement officers observed CI #1 with Norman Percy at the meeting location and then observed Robert Venturini arrive in a green Honda with Rhode Island license plates.  The officers observed Venturini approach the vehicle occupied by CI #1 and Norman Percy and leave shortly thereafter.  CI #1 separated from Norman Percy and met with law enforcement at a prearranged location.  At that time, CI #1 gave the officers approximately 1.4 grams of a white powder substance he had purchased from Venturini with the recorded police funds.  The substance later tested positive for the presence of cocaine.

32.     During the week ending June 8, 2002, the Stonington Police Department contacted officers of the New London Police Department concerning information obtained from another reliable and confidential informant (hereinafter CI #2).  CI #2 stated that he/she had first hand knowledge of the day-to-day activities of Robert Venturini, Jr.  CI #2 stated that he/she had known Robert Venturini, Jr. for several years and that Venturini had been selling cocaine, marijuana, ecstacy, and ketamine for several years.  CI #2 stated that Venturini owns several houses in New London, including houses on Cutler Street, Jefferson Avenue, and Lincoln

13

Avenue, and currently resided at 62 Cutler Street, first floor. CI #2 said that Venturini "safe houses" large quantities of narcotics at a location in Montville and has two associates who drive to Phoenix, Arizona every two weeks to purchase several kilograms of cocaine and approximately 100 pounds of marijuana for $150,000. CI #2 stated that Venturini and a female companion occasionally went to Arizona by plane to pick up narcotics to hold him over until the next delivery arrived. The female companion usually carried the drugs on the plane under her clothing.

33.     Also in June of 2002, law enforcement officers received information from another reliable and confidential informant (hereinafter CI #3). CI #3 told the officers that he/she has known Robert Venturini for more than three years and that he/she has purchased large amounts of narcotics from Venturini in the past. CI #3 described Venturini as a large-scale drug dealer who is involved in the sale of cocaine, marijuana, and ecstacy. CI #3 stated that Venturini sends two individuals to Phoenix, Arizona every two weeks to transport amounts of marijuana and cocaine back to Connecticut. CI #3 said that Venturini and his associates sell cocaine for $900 an ounce and usually do not sell less than one-ounce quantities at a time. On rare occasions, CI #3 said that Venturini would sell smaller amounts to individuals he is friendly with and trusts.

34.     CI #3 stated that he/she is friendly with one of Venturini's associates who has indicated that he/she has been to Arizona on numerous occasions to pick up 100 pounds of marijuana and two to three kilograms of cocaine at each trip under Venturini's instruction. CI #3 said that every two weeks Venturini would supply two of his associates with a vehicle and instruct them to drive to Arizona where he would then meet him. Venturini would fly to Phoenix a day later with a female companion who would conceal a large sum of money under her

clothing. Venturini purchased cocaine and marijuana with the money hidden by his female companion and then put the narcotics in the trunk of the vehicle and the two associates would drive the narcotics back to Connecticut. Venturini and his female companion would return to Connecticut by plane and keep in contact with the two drivers.

35.    The two drivers were instructed by Venturini where to deliver the narcotics once they arrived in Connecticut. CI #3 said that Venturini instructed the drivers to deliver the drugs to his "safe house" located at 143 Simpson Lane in Montville, where Venturini stores large quantities of narcotics. CI #3 said that Venturini stored smaller quantities at his residence at 62 Cutler Street, New London where he conducts his business of providing associates with moderate amounts of narcotics on consignment which they would in turn sell and earn a small amount of the profit.

36.    CI # 3 further stated that Venturini fears law enforcement after his residences were raided in the recent past, and that he launders his profits from selling narcotics by buying property and placing it in his Aunt's name. Venturini also told CI #3 that he will be all set when he gets out of jail because of his assets in his Aunt's name.

### EXECUTION OF SEARCH AND SEIZURE WARRANT
### AT 143 SIMPSON LANE, MONTVILLE

37.    During June of 2002, law enforcement officers conducted numerous surveillances at one of Robert Venturini, Jr.'s "safe houses" located at 143 Simpson Lane in Montville. Based upon the officers training and experience, the activities observed were consistent with the concealment of illegal narcotics inside the residence.

15

38.   On June 21, 2002, members of the New London Police Department and Connecticut State Police Statewide Narcotics Task Force-Eastern Division executed a state search and seizure warrant at 143 Simpson Lane in Montville.  Seized pursuant to the warrant were the following items: a plastic bag containing 14.7 grams of yellow rock-like substance which tested positive for the presence of cocaine; a large plastic bag containing 1.3 grams of white powder substance which tested positive for the presence of cocaine; numerous plastic bags containing green plant substance which tested positive for the presence of marijuana; a cooking pot on the kitchen stove which had residue consistent with powder cocaine that had been cooked and made into the form of "crack cocaine"; drug related notes; an Ohaus digital scale, of the type commonly used by drug traffickers to weigh narcotics for street-level distribution; and numerous packaging materials.

## ARREST OF ROBERT VENTURINI, JR. AND ASSOCIATES

39.   Also on June 21, 2002, prior to the execution of the warrant for 143 Simpson Lane, the Groton Police Department conducted a motor vehicle stop of a 1996 Cadillac Seville with temporary plates driven by Robert Venturini, Jr., and also occupied by Tessie Herbert and Daniel Douton.  Venturini did not have his driver's license, but produced paperwork that indicated the vehicle had been purchased days earlier in Providence, Rhode Island and was registered to Florence Venturini, Robert Venturini's grandmother.  After observing a small white pill in plain view on the dashboard, the law enforcement officer conducted a pat down search of Venturini and found 12.8 grams of crack cocaine on his person.  Douton and Herbert were then removed from the vehicle at which time twenty (20) 10 ml bottles of ketamine were located and seized.  In addition, $4,838 was also recovered and seized.

16

40.    After being advised of his constitutional rights, Venturini asked why his grandmother's name, Florence Venturini, was on the receipt for seized property for the Cadillac. The officer told Venturini that Florence Venturini's name was on the form because she was the registered owner of the vehicle. Robert Venturini told the officers that the vehicle belonged to him and that he had just registered it in her name. He also stated that he did not want his grandmother to find out about the incident and told the officers that they could keep the car.

41.    After being advised of his constitutional rights, Daniel Douton told the officers that he wanted to cooperate with police and provided a written statement that indicated his involvement with Robert Venturini, Jr. Douton stated that he had known Venturini for the past four years and that he used to live with him. Douton said that Venturini had told him the day before that he had ketamine in a Federal Express box in his van. Douton said that also the day before he had observed Venturini put a 9 mm pistol in a pillow case and put the pillow case in a black van in the driveway of 62 Cutler Street. In addition, Douton said that he was with Venturini a few days earlier on June 18, 2002 in the first floor of 62 Cutler Street and observed a shoe box containing a large amount of cocaine.

## SECOND SEARCH AND SEIZURE WARRANT EXECUTED
## AT 62 CUTLER STREET, NEW LONDON, CONNECTICUT

42.    On June 21, 2002, law enforcement officers executed a state search and seizure warrant for the residence located at 62 Cutler Street, first floor, New London, Connecticut. The police arrived and announced their presence. After a brief period of time, the police used forced entry to gain access to the dwelling. No one was located within the residence at the time the police arrived. The officers knew that Robert Venturini and Tessie Herbert were in police

custody as a result of the earlier incident in Groton.  Seized pursuant to the warrant were the following items: approximately 20 grams of cocaine, which later tested positive for the presence of cocaine; numerous financial records; over $80,000 in U.S. currency; several titles to vehicles, Check No. 47626 issued by Mashantucket Pequot Gaming Enterprise on June 19, 2002, to Tessie R. Herbert in the amount of $6,050.00 for "Chip Redemption"; Check No. 47614 issued by Mashantucket Pequot Gaming Enterprise on June 12, 2002 to Daniel K. Douton in the amount of $4,750.00 for "Chip Redemption" and endorsed "pay to the order of Robert V." signed "Daniel Douton"; Check No. 47611 issued by Mashantucket Pequot Gaming Enterprise on June 12, 2002 to Robert A. Venturini, Jr. in the amount of $4,300 for "Chip Redemption"; and a check issued by Mohegan Sun on June 15, 2002, to Robert Venturini, Jr. in the amount of $4,500.00.

43.    Based upon law enforcement training and experience, it is common practice for drug traffickers to launder their illicit monies by obtaining casino gaming chips with cash and later redeeming the chips and obtain payment in the form of a check in an effort to legitimize the money as legal gambling winnings.

44.    Also seized pursuant to the warrant was a handwritten note which stated "6/10/02  I Maria Fernandes agree to sell 38 Jefferson Ave for my cost only i.e. payoff mortgage payments, lost rents, + misc expenses i.e. electric bills and misc supplies to Robert Venturini, Jr." signed "Maria Fernandes."  Written on the bottom of the page was "6/10/02 Received from Robert Venturini, Jr. $16,000 towards purchase of 38 Jefferson New London." signed "Maria Fernandes."

45.    The officers as impounded a 1990 Mazda MPV located in the driveway of the residence.  The vehicle was consistent with the van that Douton had described to law

18

enforcement.  On June 24, 2002, the officers obtained a search and seizure warrant for the

vehicle.  During the execution of the warrant, the officers found a .45 caliber semi-automatic

handgun, which was wrapped in a pillowcase and located between the front seats.  The

identification numbers on the gun had been removed.  Also found in the vehicle were 275 boxes

of ketamine, approximately $38,000 in U.S. currency, and approximately one ounce of cocaine.

46.    Incident to the search of the residence and vehicle, Robert Venturini, Jr. and Tessie

Herbert were  arrested for narcotics violations.

## SEARCH WARRANT EXECUTED AT
## 228 MAPLE AVENUE, UNCASVILLE, CONNECTICUT

47.    On August 15, 2002, the Connecticut State Police Statewide Narcotics Task Force-

Eastern Division received a telephone call from the Maricopa County Sheriff's office in Arizona

regarding a suspicious package received by United Parcel Service in Phoenix.  United Parcel

Service contacted the sheriff's office regarding a package with an illegible label they had opened

in an attempt to locate the owner.  The UPS employees told the sheriffs that the package

contained three brick-shaped packages suspected to be cocaine.  A deputy sheriff tested the

substance and confirmed that it was cocaine.  The box was marked "extremely Urgnt" and was

addressed to "Fred Benture 228 Maple Ave. 2nd., flr., Vharsville, Ct 06382."  Law enforcement

officers in Connecticut know that the residence located at 228 Maple Avnenue in Uncasville is a

two-family dwelling owned by Maria Fernandes, Robert and Dwayne Venturini's aunt, and that

the second floor is the residence of Dwayne Venturini.

48.    Law enforcement officers in Connecticut, posing as a United Parcel employee,

attempted to deliver the package to 228 Maple Avenue on August 17, 2002, but no one was

home on the second floor to receive the package. The undercover officer said that he had a package for Fred Benture. The first floor tenant was home and said that he did not recognize the name but that "a fellow upstairs named Dwayne was expecting a package," but was not home. On August 19, 2002, UPS received a call from a man inquiring about a package. The UPS employees put the caller on hold, called law enforcement, and put the caller on speaker phone. Law enforcement officers recognized the voice as that of Robert Venturini, Jr. The UPS representative told the male caller that the parcel was a next day delivery and that it should arrive no later than 10:30 a.m.

49.    On August 19, 2002, a law enforcement officer, again posing as a UPS employee, attempted to deliver the package a second time. The officer asked the man in the second floor apartment if his name was Fred Bentur. The man said yes, that he was waiting for the package, and signed for the package. The man was later identified as Daniel Eldridge.

50.    After the package was accepted, the undercover officer and a team of officers executed a state search and seizure warrant for the second floor apartment. Eldridge told the officers that Dwayne Venturini asked him to wait in his apartment to accept a package from UPS and that he would take care of him later. Dwayne Venturini did not tell Eldridge what was in the package, but he believed that the package contained something illegal and assumed that it was marijuana because he knew that the Venturini brothers were involved in selling marijuana.

51.    During the execution of the warrant, law enforcement observed Dwayne Venturini in a white Toyota Camry enter the driveway and then leave as soon as he was aware of their presence. The officers stopped the vehicle a short time later and placed Dwayne Venturini under arrest.

20

52.     Seized pursuant to the warrant were the following items: the box containing three kilograms of cocaine and a second box similar to the one delivered.  The second box was empty, but both boxes were sent by UPS with a return address of 1634 West Polak Street, Phoeniz, Arizona.  The second box was addressed to Jeff Venturini, 228 Maple Avenue, Uncasville, Connecticut, the brother of Robert and Dwayne Venturini.

### DECEMBER 2002 ARREST OF ROBERT VENTURINI AND ASSOCIATES

53.     On December 18, 2002, officers of the New London Police Department and Statewide Narcotics Task Force-Eastern Division executed arrest warrants for Robert Venturini, Jr. and Tessie Herbert.  The officers located Venturini and Herbert at the Residence Inn in Mystic, Connecticut.  The officers knocked and announced their presence on the hotel room door and Herbert said "wait a minute."  The officers waited, but the door did not open.  The officers used the hotel manager's key, but discovered that the door was chained shut.  The officers were able to observe Tessie Herbert and Robert Venturini, Jr. in the hotel room.  They observed Robert Venturini holding a large dark colored suitcase.  Despite the officers' repeated orders to open the door, the door remained chained and the officers were unable to enter.  The officers heard noises coming from the room that sounded like a window being kicked out and thought that they were attempting to flee.  Robert Venturini finally told the officers that he would open the door.  The officers entered the room and placed Venturini and Herbert under arrest.  Also present in the room was Stuart Anderson.

54.     While conducting a sweep of the room to look for other persons, the officers looked out an open window that was missing a screen and saw a black suitcase on the ground directly below the window.  The luggage looked similar to the luggage that the officers had seen

through the chained door. A bent window screen was also observed next to the suitcase. The officers went outside and located the suitcase which was partially open. The officers observed clear plastic bags containing plant material protruding from the suitcase. The officers obtained search and seizure warrants for the luggage and hotel suite. The officers executed the warrant for the suitcase and found 5.3 pounds of marijuana, 14 ounces of cocaine, 2 grams of "crack"cocaine, 472 ecstacy pills, and a digital scale.

55. The officers executed the warrant for the hotel suite and found $17,850.00 in cash in a top dresser drawer in the bedroom. In a small suitcase in the bathroom, officers found a pair of blue Hanes shorts with duct tape around the waistband and white powder residue, an airline ticket, dated 12/3/02, for passenger William Thompson from Baltimore/Washington to Hartford, an airline ticket, dated 12/17/02, for passenger William Thompson from Phoenix to Providence, a room receipt from Red Roof Inn, dated 12/16/02, in the name of William Thompson, paper with handwritten Phoenix, Arizona phone numbers. A large clear plastic bag with cocaine residue was found on the bathroom counter top.

56. Also on December 18, 2002, Maria Fernandes was arrested and charged with conspiracy to commit money laundering, money laundering, and money laundering in the first degree in violation of the Connecticut General Statutes. On or about December 18, 2003, the Superior Court for the Judicial District of New London dismissed the criminal charges against Maria Fernandes after she completed a period of accelerated rehabilitation under the state's diversionary program.

ROBERT VENTURINI, JR.'S
CRIMINAL HISTORY AND PENDING STATE CHARGES

57.    In 1996 and 1998, Robert Venturini, Jr. was arrested and convicted on various

drug-related charges, including sale of a controlled substance, possession of marijuana,

possession of a firearm.  Robert Venturini, Jr. is currently in state custody and charged with

numerous counts of possession of narcotics and marijuana, possession of narcotics, a controlled

substance, and marijuana with intent to sell, possession of narcotics and a controlled substance

within 1500 feet of a school, possession of hallucinogens, operation of a drug factory, possession

of drug paraphernalia, criminal possession of a weapon, money laundering in the first degree, and

a violation of the Corrupt Organization and Racketeering Act.  Robert Venturini, Jr. pleaded

guilty to two counts of possession with intent to sell under the Alford Doctrine and was

sentenced to 10 years imprisonment and 8 years special parole.

CONCLUSION

58.    The Defendant, one parcel of property located at 38 Jefferson Avenue, New

London, Connecticut, with all appurtenances and improvements thereon, is real property which

was used in violation of 21 U.S.C. 801 et seq., and is therefore subject to forfeiture to the United

States pursuant to 21 U.S.C. 881(a)(7).

WHEREFORE, the United States of America respectfully asserts that there is probable

cause to believe that the Defendant Property is forfeitable to the United States pursuant to 21

U.S.C. § 881(a)(7); and requests

(a)  that pursuant to 18 U.S.C. § 985(b)(2), and 18 U.S.C. § 981(j), which permits the

Court to "take any action to . . . preserve the availability of the property subject to civil

forfeiture," the Court issue the proposed Writ of Entry attached to this Verified Complaint of Forfeiture authorizing the United States Marshals Service, or its delegate, to enter the Defendant Property, including any structures, on one or more occasions during the pendency of this in rem forfeiture action:

(1)     for the purpose of conducting an inspection and inventory and appraisal of the Defendant Property, which inspection and inventory and appraisal may include still and video photography; and

(2)      to be accompanied on any such occasion by any appraiser(s) selected by it to appraise the condition and value of the Defendant Property pursuant to 19 U.S.C. § 1606; and

(3)     to be accompanied on any such occasion by any government or contract personnel selected by it for the purpose of conducting an inventory of the Defendant Property; and

(4)     to be accompanied on any such occasion by any federal, state, or local law enforcement officers selected by it to ensure the safety of any person acting under the Writ of Entry;

(b)  that the Court decree that the forfeiture of the Defendant, one parcel of property located at 38 Jefferson Avenue, New London, Connecticut, with all appurtenances and improvements thereon, to the United States under 21 U.S.C. § 881(a)(7) is confirmed, enforced, and ordered;

(c)  that the Court thereafter order that the United States Marshal, or his delegate, dispose of the Defendant property as provided by law; and

24

(d) that the Court award Plaintiff United States all other relief to which it is entitled,

including the costs of this action.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


_____
JOHN B. HUGHES
CHIEF, CIVIL DIVISION


_____
JULIE G. TURBERT
ASSISTANT  U.S. ATTORNEY
P.O. BOX 1824
NEW HAVEN, CT  06508
(203) 821-3700
FEDERAL BAR # ct23398

<u>DECLARATION</u>

I am a Special Agent of the Drug Enforcement Administration, United States Department of Justice, and the agent assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of June, 2005.

_____
JON A. RUBINSTEIN
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

## CERTIFICATE OF SERVICE

This is to certify that a copy of the within and foregoing Amended Verified Complaint of

Forfeiture, has been mailed, postage prepaid, this 21st day of June, 2005  to:

Anthony Basilica, Esq.
37 Granite Street
New London, CT 06320

John J. Nazzaro, Esq.
164 Hemstead Street
New London, CT  06320

Robert A. Venturini, Jr.
Osborne Correctional Institution
Inmate No. 205620
100 Bilton Road
Somers , CT  06071

People's Bank
850 Main Street, 11th Floor
Bridgeport, CT 06604
Attn: Legal Department

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville, NY 14069-9000

_____
_____JULIE G. TURBERT
                                          ASSISTANT U.S. ATTORNEY